## L. & N. R. R. Co. *v.* BOHAN.

### (*Nashville.* December Term, 1905.)

1. **EVIDENCE.** As to defective air brake examined.

   In an action for personal injuries to a railroad conductor, caused by the escape of a train down a steep grade, the evidence was examined and *held* sufficient to sustain the finding by the jury that the accident was caused by a defective air brake. (*Post, pp.* 277-285.)

2. **CONTRIBUTORY NEGLIGENCE.** A question for jury when facts are controverted.

   Where there is a controversy in respect of the facts upon which the defense of contributory negligence is predicated, the question should be submitted to the jury. In this case the evidence was examined and *held* to present a question for the jury, whether the plaintiff was guilty of proximate contributory negligence. (*Post, pp.* 285-287.)

3. **CHARGE OF COURT.** Reversible error to invade province of jury on pivotal point.

   In an action for personal injuries to a railroad conductor, where he insisted that the accident was caused by a defect in the engine, in that the brake valve did not lap, which allowed the train to escape down a steep grade, and there was evidence on the part of the defendant that the alleged defect would not have caused the train to run away as it did, but would have stopped the train, because the engineer would have gotten a greater pressure than he sought to apply, an instruction that this defense is entirely paradoxical and is not a valid defense to the action is erroneous as an invasion of the province of the jury upon the pivotal point in the case. (*Post, pp.* 287-289.)

Railroad v. Bohan.

4. **EVIDENCE.** Of declaration of agent when doing act within scope of his employment is admissible.

Whenever it is admissible to prove what an agent did, it is competent to prove what he said about the act done within the scope of his employment while he was doing it; therefore, in an action for personal injuries, where it was material to determine whether the air brake on an engine was defective in that it did not lap, which resulted in the escape of the train down a steep grade, evidence of a statement by the engineer in charge of the train before it reached the grade in question that the brake valve did not lap was inadmissible. (*Post, pp.* 278, 289- 293.)

Cases cited and approved: Railroad v. Messino, 1 Sn., 220; Railroad v. Elliott, 1 Cold., 611; Willcox v. Hines, 100 Tenn., 524.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County.— J. A. CARTWRIGHT, Judge.

JOHN BELL KEEBLE and SMITH & MADDIN, for Railroad.

W. H. WASHINGTON and JOS. W. BYRNS, for Bohan.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The plaintiff below recovered a verdict and judgment against the corporate defendant and one James Marbury for the sum of $7,000 damages for personal injuries sus-

tained by the plaintiff in consequence of the alleged negligence of the defendants.

The gravamen of the action as alleged in the declaration is that the defendant in error, Bohan, was injured on the 21st of December, 1901, in a wreck caused by the escape of a freight train down Baker's hill. The declaration alleged that defendant Marbury was an employee of the railroad company in charge of trains running at or near Ridge Top and Baker's hill; that it was his duty to inspect all engines, cars, trains, and brake appliances on all trains before they made the descent of Baker's hill and to see that they were in good condition before they were allowed to make the descent.

It is then averred that the plaintiff was in the employ of the corporate defendant as conductor on a freight train and at the time of the injury was in the proper discharge of his duty and was without fault, and that on the day aforesaid, while his train was running south, its engines, cars, and brake appliances were so defective and out of repair as to render it unsafe to descend Baker's hill, and that the brakes and brake appliances were so defective that they could not hold the train under proper control while going down said hill. It is then alleged that the defendants could and ought to have known of these facts, and that by reason of their joint and concurrent negligence the train ran away while descending said hill, greatly injuring the plaintiff. It is alleged that the said Marbury was guilty of negligence

116 Tenn.—18

in not inspecting said train before sending it down the hill.

The declaration was afterwards amended so as to allege that defendants "were guilty of negligence in sending said train down said hill between Ridge Top and Baker's station without the assistance of the helping engine which the corporate defendant had provided for that purpose."

It is disclosed in the record that the accident happened on probably the steepest grade on the defendant's road, between Ridge Top and Baker's station, in Davidson county. The defendant company, impressed with the danger of operating trains on this heavy grade, had adopted and promulgated a system of printed rules for the movement of trains and the government of trainmen. The company had provided at that point a hill conductor, and also a hill engineer to assist trains up and down this heavy grade. The rules adopted by the company are entitled "Special Rules Governing the Movement of Trains and Helping Engine between Ridge Top and Baker's," and are as follows:

"The helping engine has right of track over all trains except first and second class trains between Ridge Top and Baker's.

"The hill conductor has full charge of the movements of all third and inferior class trains between Ridge Top and Baker's subject to order from the chief train dispatcher, and the employees of these trains must be governed by his instructions between these stations.

"The helping engine must assist such trains as require it in either direction between Ridge Top and Baker's. It is the duty of the hill conductor, or in his absence of the train conductor, with the assistance of the trainmen, to examine and test the brakes of each train before descending the hill.

"The helping engine when assisting a train from Ridge Top to Baker's must in all cases be placed next to the train.

"Nothing in these special instructions relieves any employee of the duty of protecting his train when necessary as prescribed by the rules."

Another set of rules adopted by the company are entitled "Rules Governing the Handling of Trains with Air Brakes between Ridge Top and Baker's, Freight Trains South Bound," and are as follows:

"Upon arrival at Ridge Top, conductors must notify the hill conductor of the number and condition of air brake cars in their trains.

"The engine man will recharge train to at least fifty pounds pressure, and make a full application of brakes by a fifteen or twenty pound reduction from the train pipe.

"The hill conductor and train crew will then examine each brake to see if applied and that there are no leaks.

"The engine man will release brakes upon signal, when each brake must be again examined to see that it is released.

"If any defect is found that will interfere with the

proper application of the brakes, it must be remedied or the defective brake cut out and the brakes again tested.

"The handles of the pressure retaining valves must be turned up to a horizontal position before starting the train, commencing at the engine and working back toward the caboose, and in turning them down to a vertical position at the foot of the hill commence at the caboose or last valve and work toward the engine.

"If it is found that too many pressure retaining valves have been turned up to a horizontal position, turn down as many as may be necessary, commencing at the caboose or at last valve and work toward the engine.

"It is the duty of the engine man to know the number and condition of brakes, and that the train is fully recharged before starting the train at Ridge Top."

As already stated, the declaration alleged that the engine, cars, and brake appliances of the train were defective and out of order, but no specific defect was pointed out. However, the theory of the plaintiff on the evidence submitted was:

First, that the engine was defective in this, that its brake valve did not lap.

Second, it was alleged that the defendant and James Marbury were negligent in failing to discover the defect in the engine and allowing the train to go down the hill in a defective condition.

Third, it was alleged that the defendants were guilty of negligence in sending said train down the hill between Ridge Top and Baker's station without the as-

Railroad v. Bohan.

sistance of the helping engine, as required by the rules of the company.

A more specific statement of the facts will now be detailed. The record reveals that the defendant in error, Bohan, and his crew, started from Nashville carrying a train of cars to Guthrie, Kentucky. At that point the engine and caboose took up the train of twenty-four loaded cars and started on the return trip from Guthrie toward Nashville. All of the cars were equipped with air brakes excepting four which were on the rear of the train.

There is evidence tending to show that at Guthrie the train was examined and the air brakes were reported in good condition. It was stated by the defendant in error, Bohan, that he himself went along and checked up the brakes and looked at the cars, and there was no defect in any of them that he could detect; that the train stopped at Sulphur Fork and the brakes worked all right, and they worked all right at Cedar Hill and at Springfield, but none of those places were marked by heavy grades.

When the train reached Springfield, which is about nine miles from Ridge Top, it passed a north-bound freight with one S. J. Luton as engineer. Luton testified that while both freight trains were standing at the depot in Springfield receiving orders for their movements, he engaged in a conversation with Fitzgerald, the engineer of the south-bound freight of which the defendant in error, Bohan, was conductor.

Witness stated:

"I was standing there talking to Fitzgerald — just standing out in front of the office talking to him—and Mr. Bohan (the conductor) came out of the office and he (Fitzgerald) said: 'Mike (referring to Bohan), I am not going down the hill by myself this morning; my brake valve won't lap.' . . .

"A. As well as I remember, we were all standing there about two or three feet from one another."

An objection was interposed to this testimony by counsel for the defendant company on the ground that it was hearsay and incompetent, but the objection was overruled and the testimony admitted, to which plaintiff excepted.

The defendant in error, Bohan, testified that he did not hear the remark made by Fitzgerald and addressed to him according to the testimony of Luton: Bohan does say, however, that at Cedar Hill before he got to Ridge Top, he went and talked with his engineer, Fitzgerald, about whether or not they would take the helping engine down the hill. Bohan says:

"He told me he believed he would get it to help him down.

"Q. What did you say to him? A. I didn't say anything; told him all right; do as he wished.

"Q. You left it to him to determine whether he would get the engine to help him down or not? A. I told him to do as he thought best about it. I left it to him to say."

Railroad v. Bohan.

And again:

"Q. And you told him that it was for him to say?  A. I says, 'That is all right; use your judgment.'

"J. What is it?  A.  I says, 'All right use your own judgment about it.' "

Bohan further admits that in statement made by him to the agent of the defendant company soon after the accident he said: "Engineer Fitzgerald, at some point before we got to Ridge Top, said something about getting help to go down the hill.  I told him he was the man to say whether we should have help or not.  The hill engine was there ready to help us down, and an engine is kept there at all times for that purpose.  Fitzgerald concluded to go down without help."

Under the rules of the company already referred to, upon the arrival of the train at Ridge Top, it was: "First, the duty of Bohan to notify the hill conductor of the number and condition of the air brake cars in the train; second, the engine man should recharge the train and make full application of brakes; third, the hill conductor and the train crew then examine each brake; fourth, the engine man releases brakes; fifth, the hill conductor and train crew examine a second time to see if the brakes are released; sixth, it is made the duty of the engine man to know the number and condition of the brakes, and that the train is fully charged."

It would appear from these rules that the duty of inspection did not rest alone upon the hill conductor, but equally upon the hill conductor, the road conductor, the

Railroad v. Bohan.

engineer of the road engine, and the train crew. There was also evidence tending to show there was an established custom that, if the conductor and engineer of the south bound train thought the train was prepared to go down the hill alone the train was pulled past the switch. If the train stopped short of the switch, and the engine was cut loose from the train and pulled down, it is equivalent to requesting the hill engine to take the train down. The defendant in error, Bohan, himself, says that it was customary to stop short of the switch if a train wanted the helping engine, or to back back. The evidence also tends to show that on the day of the accident the engine pulled this train beyond the switch.

It is also established by the proof that it was the practice at Ridge Top for the engine to be inspected and tested by the engineer or fireman in charge while the hill conductor, the train conductor, and the train crew inspected the brakes of the cars. It appears that on this occasion, when the train pulled past the switch, the fireman was in charge of the engine while the engineer went for his orders, that the fireman inspected the engine, that the brakes were applied and released, and that the cars were inspected by Marbury, the hill conductor, Bohan, the train conductor, and by two brakemen. It is admitted by Marbury, the hill conductor, that before the train had come to a full stop at the switch he gave the engineer a signal to go ahead, or what he terms "a high ball." This term, he explained, means they must go if they want to; if they have got a train they can handle,

Railroad v. Bohan.

they can go. It means that the hill is clear. He admits he left the determination of all of these questions to the engineer and the train crew. This witness, the hill conductor, admitted that on the arrival of this train, under the rules of the company, he was in entire command of it, and had the right to decide whether the train should go down alone or with the assistance of the hill engine. He further stated that under rules of the company, the employees of this freight train were required to be governed by his instructions.

The hill conductor also testified that it was usual and customary for the train conductor when he reached Ridge Top to go to the office and make his report, and while he was doing that he, the hill conductor, inspected the train. He was asked how long he inspected this train, and replied, "three or four minutes—maybe not so long." He states, however, that he and the crew inspected the train. This witness also testified that if the engineer's valve wouldn't lap, he couldn't gauge the amount of air he was putting on, and it indicated a continued leaking from the train line.

It appears that the hill conductor did not get upon the engine or make any inspection of its brakes, but his inspection of the brakes was confined to the cars and consumed but a few minutes.

There is proof, also, tending to show that it was neither expected, nor customary, for the train conductor to assist in the inspection.

It further appears that as soon as the engineer receiv-

ed his orders, he came out of the office and started the train down the hill. According to the testimony of one of the brakemen, it was customary to apply the brakes at a point just at the brow of the hill, while the train was still in the big rock cut. It is in proof that the speed of the train quickly increased after it turned the brow of the hill.

The defendant in error, Bohan, testified that he felt a jam or jar while the train was in the big rock cut, positively indicating an application of the brakes; that he stepped out of the rear of the caboose and saw that the train was running away; that it was going so fast that, when he opened the door and stepped in, he was thrown down on the side; and that there was no perceptible diminution in the speed of the train after the jam. Carneal (the brakeman) did not notice the jar. He was on top of the car, and, when he discovered that it was running away, he laid down and grasped the foot-board. Two witnesses testified they heard the engineer whistle for hand brakes. The engine with all the cars, left the track, and Bohan, the defendant in error, was found beneath the brakes of the wrecked caboose. The engineer, fireman, and front brakeman, were all killed, Carneal, the other brakeman, alone escaping without injury.

This is a substantial statement of the case, and upon the facts disclosed it is insisted the court should have sustained the motion submitted on behalf of the defendants to direct the jury to return a verdict in their favor. This contention is based upon two propositions, viz.:

First, it is insisted there is no evidence in the record to show that the defect complained of was the proximate cause of the accident; second, plaintiff cannot recover because he himself was not free from fault. The gravamen of the action is that the train was permitted to descend Baker's hill when it was in a defective condition, which condition was known, or could have been known, by the defendants if they had been in the exercise of ordinary care. As already stated, plaintiff below proved by the testimony of Luton declarations of the deceased engineer to the effect that the brake valve of his engine failed to lap. It is insisted this is all the evidence in the record even tending to show a defect in the equipment of the train. But there is other evidence from which the jury was warranted in inferring that the engine was in a defective condition. It is to the effect that, when the train was started on its way down the hill, the engineer, in accordance with the usual custom, applied the air brakes; but they failed to respond and hold the train, but the train proceeded without any diminution of speed and with greater momentum every second until it had been thoroughly wrecked at the bottom of the hill. The defendant in error, Bohan, testified that the air brakes were applied just before the train left the big cut at the top of the hill, which was usual and customary for the purpose of holding the train as it descended the heavy grade.

It further appears that, after the air brakes were applied by the engineer and failed to respond, he blew the

whistle for hand brakes, in accordance with the rule in such an emergency. The hand brakes, however, were not applied. The surviving brakeman testified that he did not hear the whistle for hand brakes. One witness testifies that on a hill like Baker's hill, if the air fails to work quickly, it is a case of runaway.

We are therefore of opinion that the jury were warranted in finding that the deceased engineer put on his brakes as the train turned down the hill, which according to the testimony of Marbury, the hill conductor, was proper and customary. There is also evidence tending to show that, if the air brakes had responded, the train could have been controlled and the wreck prevented.

There is testimony in the record to the effect that, if the brake valve failed to lap, the engineer could not regulate the pressure of the air and it would be impossible to let a train down that hill, or, in other words, if a brake valve failed to lap, the breaking power is lost. It it true several experts were introduced, on behalf of the defendants below, who testified that the effect of the failure of the brake valve to lap would be that when the engineer went to apply the air, instead of getting ten pounds pressure, as he ordinarily would, he would have gotten the full pressure of the apparatus, and the train would have stopped on the incline, and that this defect could not have been the reason that this train ran away at this point.

But other witnesses with practical experience in this matter testify to the contrary and in favor of the con-

tention made on behalf of the plaintiff below. This controverted question must, therefore, be held to have been resolved by the jury in favor of the defendant in error.

The second proposition advanced on behalf of the plaintiff in error is that the defendant in error, Bohan, was guilty of such a proximate contribution of negligence as to debar him from any recovery in this cause. This contention is based upon the following alleged facts, viz:

First. "Bohan was conductor of the train, and had a right to call for this engine (the helping engine) if he thought his train needed it."

Second. "Under the rules, it was his duty to notify the hill conductor of the number and condition of the air brakes in his train. He could not do this unless he made some effort to ascertain their condition. He made no such report, nor does he claim to have had any information upon which to base such a report."

Third. "He admits that at Cedar Hill the engineer stated to him that he thought he would get help down the hill, and he states that he told him it was for him (the engineer) to determine. This conclusively shows that he had an intimation that something was not right, for the custom was to go down the hill without the engine, and that he had at once placed the whole responsibility upon the engineer."

Fourth. "In the face of this he made no report to the hill conductor. He asked no question of the engineer. He literally left it, as he said, to the engineer."

Fifth. "He knew well the custom of inspection at Ridge Top. He understood, for he does not deny the undisputed testimony, that the handling of the engine during the inspection was left to those in charge of the engine."

Sixth. "He also knew that, as far as signals were concerned, the engineer had said, by pulling past the switch, that he did not want help."

Counsel is mistaken in the assumption that under the rules of the company it was the duty of the defendant in error, Bohan, to notify the hill conductor of the number and condition of the air brakes in his train. The rule referred to does not require a report touching the air brakes, but of the number and condition of air brake cars; nor are we aware of any rule that requires the conductor to inspect the condition of the engine with a view of determining whether the air brake valve is in good condition. Marbury, the hill conductor, testifies that it was customary for the inspection to be made while the train conductor is making his report. Rule No. 4 imposes upon the train conductor the duty to examine and test brakes only in the absence of the hill conductor. It does not appear that defendant in error, Bohan, had been apprised of any defect in the engine prior to the time of the accident. According to his testimony, he did not hear the remark of Fitzgerald, the engineer, although addressed to him, at Springfield; and it does not appear that in the conversation between Bohan and Fitzgerald at Cedar Hill, which was still near-

er Ridge Top, was anything said in respect to a defect in the engine.

As already seen from the rules of the company, the hill conductor had full charge of the movement of this train between Ridge Top and Baker's, and the train crew were subject to his instruction between these stations. The duty was imposed upon him, with the assistance of the train men, to examine and test the brakes of each train before descending the hill.    It is said by counsel for plaintiff in error that, under the custom at Ridge Top, the hill conductor never examined the engine, but this was left to those handling the road engine, but it does not appear that the defendant in error (Bohan) was fixed with any knowledge of such a custom. It is obvious that such a custom is in contravention of the printed rules, and is not binding upon those who are not shown to have been aware of the custom and to have acted upon it.

So we are unable to say upon this evidence that the plaintiff was guilty of such proximate contributory negligence as would defeat his recovery.   On the facts disclosed in the record presenting a controversy on this subject, the question was properly left to the determination of the jury.

The fourth assignment of error is based upon the following instruction given by the trial judge to the jury, viz.:  "It is further insisted by the defendants that, even if the brake valve did not lap, the effect of its not lapping was to draw off the air from the train line and to

cause the air in the auxiliary reservoir to put on the brakes and to stop the train, and hence that the defect of the brake valve was not only not a defect, but that it was an advantage in the operation of the train in preventing a runaway. Now, gentlemen, this defense seems, and is, entirely paradoxical, and it is not a valid defense to this action. The law requires the defendant to have the whole of these appliances in reasonably safe condition and repair, and it could not rely on operating a defective appliance in some other manner and thereby claim exemption from liability for a defective appliance or apparatus."

As already seen, witnesses were introduced on behalf of the defendant below, who testified that the failure of a brake valve to lap would not have caused the train to run away, but would have stopped the train, because the engineer would have gotten a greater pressure than he had sought to apply if he had applied the brakes at all. It was therefore an invasion of the province of the jury for the trial judge to say that this proof on the part of the company was not a valid defense to the action.

It was a controverted question on the trial: First, whether or not there was any defect in the engine; second, whether the air brakes had been applied as the train descended the heavy grade. It was insisted, moreover, on behalf of the defendants, that, if the brake valve of the engine as a matter of fact did fail to lap, this fact would not have prevented the stop of the train. Various theories were projected on this subject, supported by ex-

pert testimony on the one side and denied on the other by train operatives of practical experience. The proximate cause of the runaway was the pivotal point in the case and a question that was very much controverted in the proof. It was, therefore, highly prejudicial to the plaintiff in error for the trial judge to instruct the jury that evidence introduced tending to show that the alleged defective condition of the brake valve could not have been the proximate cause of the accident and was not a valid defense to the action.

The second assignment of error is that the court erred in permitting the witness S. J. Luton to testify that at Springfield, on the morning of the accident, the deceased engineer, Fitzgerald, remarked in his presence that his (Fitzgerald's) brake valve did not lap. The testimony in question is as follows:

"Q. Did you hear Mr. Fitzgerald make any remarks about his air brakes and his air at Springfield?"

Objection by defendant on the ground that it was hearsay and incompetent. The objection was overruled, to which ruling the plaintiff in error excepted. Thereupon the question was repeated as follows:

"Q. If Mr. Fitzgerald said anything to you at Springfield about his air brake or engine, repeat what he said, Mr. Luton. If he said anything in your presence, just give his words as near as you can repeat them.

"A. I was standing there talking to Fitzgerald—just standing out in front of the office talking to him—and

Mr. Bohan came out of the office and he said: 'Mike, I am not going down the hill by myself this morning. My brake valve won't·lap.' This is all I heard him say about it."

As already seen, this conversation occurred at Springfield about nine miles from Ridge Top, between Fitzgerald, the deceased engineer of the wrecked freight train, and S. J. Luton, the engineer of a north-bound freight train. The remark was addressed to the defendant in error, Bohan, but was not heard by him. All of these persons were standing just outside of the station office at Springfield and within two or three feet of each other.

The evidence was offered by the plaintiff below, first, as evidence tending to show the condition of the engine; second, as proof of the fact that defendant company had notice of the engine's condition before it left Ridge Top. It is said it was an admission made just before the accident by the only person who was expected to know the condition of the engine. It is said the engineer was in charge of this engine, and was the servant to whom was delegated the examination, inspection, and control of the engine. It is argued that, if the engine becomes unroadworthy and the engineer knows it, his knowledge is imputed to the company. It is said the engineer was in strict line with his duty when he made the remark; that he was on his way to Ridge Top, eight or nine miles away, and the remark was made in contemplation of his trip down the hill, and explanatory of ·what he

was then about to do. The remark was made while in the act of discharging his duty and while contemplating the descent of the hill which was just before him, and which was on his mind. We are of opinion the evidence was properly admitted under the authority of two cases in this State.

*N. & C. R. R.* v. *Elliott*, 1 Cold., 611, 78 Am. Dec., 506, was an action brought by Elliott to recover damages for personal injuries sustained while in the employment of the company. Elliott was a minor under twenty-one years of age, and had been employed as a hand on a locomotive engine known as the "Cumberland" to pass wood from the tender to the fireman. This engine was used for the purpose of pushing freight trains up the Cumberland Mountain at the tunnel, on account of the heavy grade.

It appears that the engine, in pushing a freight train, ran off a bridge, and, falling over, killed the fireman and inflicted permanent injuries upon Elliott. One of the grounds alleged for recovery was that the engine from its construction was not adapted to run safely on a curve. The court charged the jury that if either the road or machinery was defective, and that fact was known to the engineer, that would be knowledge on the part of the company. This instruction was held correct by this court; it being stated that the established rule is that notice to an agent in the transactions for which he is employed, and within the scope of the authority confided to him, is notice to the principal.

The case of *N. & C. R. R.* v. *John Messino*, 1 Sneed, 220, is also cited in support of the action of the trial judge in admitting the evidence. That was an action by the plaintiff against the railroad company for injuries done him while a passenger, as the result of the car running off the track. The court permitted the plaintiff to prove that the engineer in charge of the engine was heard to say, either before or after the accident, "that he would make his engine make her time or blow her to h—l." This court, in passing on the admissibility of that evidence, said: "This remark was made by one of the agents of the company in connection with his employment, and might be a circumstance to show his rashness or unfitness for so important a position, and tends to prove the cause of the disaster. Whenever it is admissible to prove what an agent did, it is competent to prove what he said about the act while he was doing it."

*Willcox* v. *Hines*, 100 Tenn., 524, 45 S. W., 781, 66 Am. St. Rep., 761, was an action to recover damages for personal injuries occasioned by the fall of a porch, brought by an inmate of the leased premises against the owner. Prior to the accident, the owner or his authorized agent sent a workman to repair the premises, and after the post beneath the porch was fixed, the workman remarked: "Now, that is safe." It was held that the statement or assurance of the carpenter while performing the carpenter's work was admissible and binding upon the defendant.

Counsel also cite 2 Wigmore on Evidence, p. 1077, sec. 1078, wherein the author says: "(1) He who sets an-

Railroad v. Bohan.

other person to do an act in his stead as agent is charge-
able by such acts as are done under that authority, and
so too, properly enough, is affected by admissions made
by the agent in the course of exercising that authority.
The question therefore turns upon the scope of the au-
thority. This question, frequently enough a difficult
one, depends upon the doctrine of agency applied to the
circumstances of the case and not upon any rule of evi-
dence. . . . The most difficult field in the appli-
cation of this principle is that of tortious liability. For
example, if A. is an agent to drive a locomotive, and an
injury ensues, why may not his admissions after the col-
lision acknowledging his carelessness be received against
the employer? Because his statements under such cir-
cumstances are not made in the performance of any
work he was set to do. If he had before the collision
been asked by a brakeman whether the train would take
a switch at a certain point and had then mentioned re-
ceiving certain instructions from the train dispatcher,
this statement might be regarded as made in the course
of performing his appointed work. Nevertheless such
problems admit of much speculative and barren argu-
ment."

Without investigating the general authorities on this
subject, it suffices to say that in our opinion the two
cases decided by this court are conclusive of the ques-
tion and that the evidence was properly admitted by
the trial judge. But for the error in the charge men-
tioned, the judgment will be reversed, and the case re-
manded for a new trial.