WALKER D. HINES, Director General of Railroads, *v.* H.
W. PARTRIDGE.*

*(Knoxville,* September Term, 1920.)

1. **MUNICIPAL CORPORATIONS.** Ordinance requiring flagman at
   crossing not void for failing to prescribe penalties.

A provision of an ordinance, relating to the keeping of a flagman
on duty at a railroad crossing, was not void because it failed to
prescribe a penalty, and failure of railroad to observe it was neg-
ligence *per se,* even though the municipality could not enforce it
by a criminal proceeding, the ordinance in question being designed
for the protection of individuals, and not the municipality itself.
(*Post, pp.* 229-231.)

Case cited and approved: De Scheppers v. Railroad, 179 Ill. App.,
298.

Case cited and distinguished: Chicago etc., R. R. Co. v. Hines, 82,
Ill., App., 488.

2. **RAILROADS.** Ordinance limiting speed to four miles per hour not
   unreasonable.

An ordinance cannot be held unreasonable simply because it limits
the speed of trains to four miles an hour at a crossing within the
city, since to justify courts in declaring void an ordinance limit-
ing the speed of railroad trains within a city, its unreasonableness
or want of necessity as a police regulation must be clear, manifest,
and undoubted.  (*Post, pp.* 231-232.)

Cases cited and approved: Central R. & Bkg. Co. v. Brunswick, 87
Ga., 386;  Gratiot v. Railroad, 116 Mo., 450;  Louisville & W. R.
Co., v. Webb, 90 Ala., 185.

On excessiveness of verdicts in actions for personal in-
juries resulting in death, see note in L. R. A., 1916C, 810.

3. **RAILROADS.** Negligence in backing train at unlawful speed over crossing without flagman held for jury.

In action for damages arising from a collision between an automobile and defendant railroad's train at a crossing in a city, *held* that court did not err in not directing a verdict in favor of defendant upon a count of the declaration, alleging that the train was being backed over the crossing at a rate of speed in excess of that prescribed by an ordinance of the city, and without having flagman present as required by such ordinance. (*Post*, p. 232.)

4. **TRIAL.** No direction of verdict where material evidence conflicting

There can be no constitutional exercise of the power to direct a verdict in any case, where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence on the issues to be tried, but the case must go to the jury. (*Post*, p. 232.)

Cases cited and approved: Tenn. Cent. R. R. Co. v. Morgan, 132 Tenn., 1; Norman v. Southern R. Co., 119 Tenn., 401; Kinney v. Y. & M. V. R. R. Co., 116 Tenn., 450.

5. **TRIAL.** On motion for directed verdict for defendant, view of evidence most favorable to be taken.

In considering defendant's motion for a directed verdict, that view of the evidence most favorable to plaintiff's case must be taken by the court; and, if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. (*Post*, p. 233.)

Case cited and approved: Nashville v. Reese, 138 Tenn., 471.

6. **APPEAL AND ERROR.** Finding 'of jury on disputed questions of fact binding on supreme court.

Finding of jury upon disputed questions of fact are binding on the supreme court. (*Post*, p. 233.)

7. **RAILROADS.** Automobilist's negligence held for jury.

In an action for damages arising from collision between automobile and defendant's train at railroad crossing in city, whether plain-

Hines v. Partridge.

tiff was guilty of contributory negligence *held* for the jury. (*Post,* *pp.* 233-235.)

8. **NEGLIGENCE.** Contributory negligence question for jury.

Where there is a controversy in respect of facts, upon which the defense of contributory negligence is predicated, the question should be submitted to the jury. (*Post, p.* 235.)

Cases cited and approved: La Follette, etc., R. Co. v. Minton, 117 Tenn., 415; Railroad v. Bohan, 116 Tenn., 271; Knoxville v. Cox, 103 Tenn., 368; Robertson v. Cayard, 111 Tenn., 356.

9. **DEATH.** Beneficiary not prejudiced by contributory negligente of cobeneficiary.

Contributory negligence of husband could not prejudice in any way minor children who were not at fault in an action to recover damages for wrongful death of wife and mother under Shannons Code, Sections 4029a1, 4029a2. (*Post, pp.* 235, 236.)

Acts cited and construed: Acts 1897, ch. 86.

Case cited and approved: Anderson, Adm'r. v. Memphis Street Ry. Co., 227 S. W. 39.

Code cited and construed: Secs, 4029a1, 4029a2, (S.).

10. **DEATH.** Burden of proving contributory negligence on defendant.

In an action by husband to recover damages for wrongful death of wife, under Shannons Code, sections 4029a1, 4029a2, the burden ·of proof on the issue of contributory negligence of the husband is upon the defendant. (*Post, p.* 236.)

11. **RAILROADS.** Automobilist's violation of statute does not · affect right to recover damages.

Acts 1917, chapter 36, making it a misdemeanor for drivers of automobiles not to come to a full stop before crossing railroad tracks, cannot be construed as bearing on or in any way affecting the common-law right of recovery of litigants in damage suits, and court did not err in refusing to charge in a damage suit against a railroad that failure to stop constituted contributory negligence. (*Post, pp.* 236, 237.)

Hines v. Partridge.

Acts cited and construed: Acts 1917, ch. 36.

12. **DEATH.** Instruction on damages for death of wife held not prejudicial error.

In an action for wrongful death of wife Shannon's Code, sections was the pecuniary value of the life of deceased, and not any sen- 4029a1, 4029a2, an instruction, "If you find in favor of the plaintiff, it will be your duty to fix the amount of his recovery. The measure of the recovery would be reasonable compensation for the life of the deceased. In determining that, take into consideration her age, the state of her health, her expectancy of life, of a person of her state of health and age, and let your verdict be for reasonable compensation," *held* not prejudicially erroneous,, although the court should have charged the jury that the measure of damages was the pecuniary value of the life of deceased, and not any sentimental value which the jury might place on the deceased's life, and that it should be taken into consideration that at best the duration of life is uncertain. (*Post*, *pp.* 237, 238.)

13. **DEATH.** $10,000 not excessive for death of wife.

A verdict of $10,000 for the wrongful death of a wife and mother, 34 years of age, and in good health, was not the result of sentiment, nor excessive. (*Post*, *pp.* 237, 238.)

FROM DAVIDSON.

Appeal from the Circuit Court of Hamilton County.— HON. OSCAR YARNELL, Judge.

W. H. WATKINS and BROWN, SPURLOCK & BROWN, for appellant.

WHITAKER & FOUST, for appellee.

Hines v. Partridge.

MR. JUSTICE HALL delivered the opinion of the Court.

This is an action of damages brought by H. W. Partridge, who will hereinafter be referred to as the plaintiff, against W. D. Hines, Director General of Railroads, who will hereinafter be referred to as the defendant, to recover for the alleged wrongful and negligent killing of his wife, Mrs. Dove Partridge on February 21, 1919, in the city of Chattanooga, Tenn., in a collision between the plaintiff's automobile and one of the trains controlled and operated by the defendant, at Market street in said city.

A trial of the case in the court below before the court and jury resulted in verdict and judgment in favor of the plaintiff for the sum of $10,000 from which judgment the defendant appealed to the court of civil appeals. The plaintiff also appealed to that court from the action of the circuit judge in peremptorily instructing the jury to return a verdict for the defendant as to the first, second, and fourth counts of the declaration; the case being submitted to the jury alone on the third count.

The court of civil appeals affirmed the action of the circuit judge in peremptorily directing a verdict in favor of the defendant as to the second and fourth counts of the declaration, but reversed his action as to the first count, holding that the case should have been submitted to the jury as to this count also. That court, however, reversed the judgment rendered upon the third court for the reasons to be hereinafter stated, and remanded the case for a new trial.

Both the plaintiff and the defendant have filed petitions for writs of *certiorari,* and the case is now before this court for review.

The plaintiff, by his assignments of error, challenges the action of the court of civil appeals in reversing the verdict and judgment rendered on the third count of his declaration, as well as its action in affirming the judgment of the circuit judge directing a verdict in favor of the defendant as to the second and fourth counts of his declaration.

The defendant, in his petition, challenges the action of the court of civil appeals in refusing to hold that the circuit judge erred in not directing a verdict in his favor as to the third count of the declaration on his motion made at the conclusion of all the evidence, and in pretermitting certain of his assignments of error made in that court presenting certain questions of law, which will be hereinafter referred to.

Mrs. Dove Partridge, the wife of the plaintiff, was killed by a collision between an automobile, in which she was riding with plaintiff, and a backing train of the Central of Georgia Railway Company, moving at the time over the tracks of the Nashville, Chattanooga & St. Louis Railway Company; both of said corporations being under the control and management of the defendant, and were being operated by him at the time of the accident resulting in the death of Mrs. Partridge. No one was in the automobile at the time of the collision except the plaintiff and his wife, whom the proof shows was then thirty-four years of age. The accident occurred at a grade crossing where Market street crosses the tracks

Hines v. Partridge.

of the Nashville, Chattonooga & St. Louis Railway Company at about the hour of 12:20 a. m. Plaintiff and his wife were going from their home in Highland Park to the Terminal Station, which is located a half mile south of the place where the accident occurred, for the purpose of meeting a relative of the plaintiff's wife. The train, which collided with plaintiff's automobile, consisted of a switch engine, tender, one coal car, and three box cars. The engine was in front of the cars, and was pushing them backwards in a westerly direction. The coal car was next to the tender, and the box cars were moving in front. The general direction of Market street is north and south, and the railroad tracks cross Market street, at the point where the accident occurred, diagonally. There are six railroad tracks at said crossing. They run approximately parallel to each other, but they widen out somewhat in a fan shape as they extend westward across Market street. Plaintiff was traveling south on Market street at the time of the collision. He had crossed five of said tracks, and the collision occurred on the sixth or southernmost track.

Plaintiff offered testimony tending to show that as he approached the crossing, and while crossing the tracks north of the last one, he looked and listened for a train, but did not see or hear one until his automobile was within about five feet of the train which collided with his car; that no bell on the train was being sounded at the time, and there was no signal of any character given indicating that a train was about to cross Market street; that his wife first saw the train and screamed, and at that time he saw it also, but his automobile was too close

to it to stop and prevent the collision; that as he went across the other tracks and approached the southern-most track his automobile was running at a speed of between eight and ten miles an hour; that there were no lights on the train, and it was running at a speed of from ten to twelve miles an hour; that the front box car struck the automobile on the left-hand side near the wind shield and fender, and knocked or pushed it along the track westward about sixty feet before the train wos brought to a stop; that the automobile was totally wrecked, and the impact of the train against it threw him and his wife out upon the track, and his wife was killed and he was seriously injured; that at the time of the collision his automobile was being operated along the right hand or west side of the street car track, which crosses the railroad tracks at said crossing, and runs north and south in the center of Market street, and that the left wheels of his automobile were running along on the plank that runs along the west rail of the street car track, and immediately outside of it.

The third count of the plaintiff's declaration averred that the defendant was negligent in the operation of its train, in that it was being pushed or backed over said crossing at Market street at a rate of speed in excess of that prescribed by an ordinance of the city of Chattanooga, which is incorporated in section 397 of the Code of said city, and which ordinance was in force at the time of the collision. This ordinance provides:

"It shall be the duty of the railroad companies using the tracks across Market street, Cowart, and Montgomery avenue, to place and keep one flagman on Hook, one

flagman, Cowart, two flagmen on Market at Central Depot, two flagmen at Nashville crossing, one flagman on King, one flagman on Montgomery or Alabama Great Southern, one flagman on Montgomery for Chattanooga, Rome, and Columbus, one flagman on Montgomery for Belt, one flagman on Rossville avenue. All trains shall be preceded by a flagman walking in front of cars or engines while crossing or backing, whose duty it shall be to prevent all railroads trains passing said tracks, from going at a greater rate of speed than four miles an hour; and further to protect the lives of persons passing along the streets at the points mentioned. All railroad engineers or firemen who drive or run an engine or train, across said Market, Cowart, Montgomery avenue, Boyce, East End avenue, and King streets, in said city, at a greater rate of speed than four miles an hour, shall be deemed guilty of a violation of this ordinance, and upon conviction thereof before the recorder, shall be punished by a fine of not less than ten ($10) dollars, for each offense."

In the third count it was further averred that the defendant was negligent in failing to have, at the time of the collision, any flagman at the Market street crossing on duty, and negligently failed to have said train preceded by a flagman walking in front thereof while it was crossing said street, and that such negligence was the direct and proximate cause of the death of plaintiff's wife.

The trial judge gave this ordinance in charge to the jury, stating to them as follows:

"The defendants, gentlemen of the jury, had a right to operate their train over this crossing, but it was incum-

bent upon them to observe the provisions of this ordinance. It was their duty in backing their train at this time and place to run it at a speed not to exceed four miles per hour; it was also their duty to have on hand two flagmen, and to have one of them preceding the train, to walk out in front of it so as to give warning to the traffic. If they failed to do this, then they were guilty of negligence *per se,* that is, negligence as a matter of law, and if the negligent violation of the provisions of this ordinance resulted in the death of the plaintiff's wife here, then the plaintiff is entitled to recover."

The court of civil appeals was of the opinion that the first provision of said ordinance, which required the defendant to keep two flagmen on duty at the crossing where the collision occurred, one of whom should precede trains across the same by walking in front of them, for the purposes stated in said ordinance was invalid because it did not prescribe any penalty for its violation either by the defendant, or the flagmen stationed or kept at said crossing, and that therefore the defendant was not bound to regard it. The court of civil appeals was further of the opinion that the trial judge committed error in giving that provision of the ordinance in charge to the jury, and reversed the judgment of the court below for that reason.

It may be remarked here that the defendant, neither in the court below nor in the court of civil appeals, challenged the validity of said ordinance upon the ground that it failed to prescribe any penalty for its violation, but this question was raised by the court of civil appeals of its own motion. The defendant did challenge the validity of the ordinance upon the ground that it was unreasonable,

in that it limited the speed of trains to four miles an hour at said crossing. This contention, however, was overruled by the court of civil appeals.

We do not think it can be said that the provision of the ordinance relating to the keeping of flagmen on duty at said crossing is void because it fails to prescribe a penalty. We think that, notwithstanding the ordinance prescribes no penalty for its violation in this regard, it is one the defendant was bound to observe, and its failure to observe it was negligence *per se*. The ordinance is in the nature of a police regulation, it is true, and while the municipality could not enforce it by a criminal proceeding, or a proceeding in its nature criminal, it prescribed a rule of conduct which the defendant was bound to observe in the operation of its trains, for the safety of persons using the highway. The very object of the ordinance was to protect persons using Market street against injury from the operation of the defendant's trains at said crossing. The defendant had previously recognized and accepted this ordinance by keeping two flagmen at this crossing for the purpose of performing the duties imposed by said ordinance, and it was insisted by the defendant that said flagmen were in the performance of their duties at the time of the accident, though, as before stated, the jury found this contention against the defendant.

In *Chicago, etc., R. R. Co.* v. *Hines*, 82 Ill. App., 488, it was held that a statutory prohibition is equally efficacious, and the illegality of a breach of the statute is the same, whether a thing be prohibited absolutely, or only under a penalty. That was a suit brought by the plaintiff, Hines, to recover of the railroad company for per-

sonal injuries resulting to him from the negligence of the railroad company in violating a speed ordinance of the city of Chicago, in the operation of one of its trains. The court, in passing on the validity of the ordinance said:

"Neither do we think the ordinance ineffective because it does not appear that a penalty is prescribed for its violation. The section is expressly prohibitive in terms, and is certified by the clerk to be a true copy of section 1830 of the Municipal Code of the city passed by the city council, etc. Blackstone defines municipal law as 'A rule of civil conduct prescribed by the supreme power in a state, commanding what is right and prohibiting what it wrong.' 1 Cooley's Bl. marg. p. 44. A statute may be expressly prohibitory, or it may be prohibitory by implication, as by prescribing a penalty. Sedgwick on Con. of Statutes (2d Ed.), p. 71; 1 Kent's Com. (12th Ed.), 567."

The latter author says: "The principle is now settled that the statutory prohibition is equally efficacious, and the illegality of a breach of the statute is the same whether a thing be prohibited absolutely or only under a penalty."

To the same effect is the rule announced in the case of *De Scheppers* v. *Railroad,* 179 Ill. App., 298.

The court of civil appeals, in its opinion, cites cases from New Jersey, Vermont, and Kansas to support its holding that the ordinance in question, in so far as it imposed the duty on the defendant to keep flagmen at the crossing where the accident occurred, is void, because it does not prescribe a penalty for its violation in

Hines v. Partridge.

this particular; but when those cases are examined it is found that in each case the ordinance involved prescribed some duty for the protection of the municipality itself, and not for the protection of individuals composing the municipality. There is a marked distinction between the two classes of ordinances. The former can be enforced only by means of a penalty, while as to the latter the violator may be called to answer in a civil action by the individual who suffers injury by reason of its violation. McQuillin on Municipal Corporations, vol. 2, sections 673, and 674.

We do not understand that counsel for the defendant controvert the general and well-established rule to the effect that the violation of such an ordinance, if it be valid, is negligence *per se;* but it is insisted that the ordinance in question is unreasonable because it limits the speed of trains to four miles an hour at said crossing. We cannot assent to this contention. To justify the courts in declaring void an ordinance limiting the speed of railroad trains within the limits of a city, its unreasonableness, or want of necessity, as a police regulation, must be clear, manifest, and undoubted. *Central R. & Bkg. Co.* v. *Brunswick,* 87 Ga., 386, 13 S. E., 520; *Gratiot* v. *Railroad,* 116 Mo., 450, 21 S. W., 1094, 16 L. R. A., 189; *Louisville & W. R. Co.* v. *Webb,* 90 Ala., 185, 8 South., 518, 11 L. R. A., 674.

In this last case it was held that an ordinance limiting the rate of speed of locomotives moving within the city to four miles an hour was a reasonable police regulation.

Numerous cases could be cited holding similar ordinances reasonable, and especially is this true of ordi-

nances applying to trains and locomotives being operated within and through populous sections of cities, and over muchly traveled streets. The evidence shows that Market street, in the city of Chattanooga is the principal street of the city, and is extensively traveled.

We do not think, in view of the evidence offered by the plaintiff, that it can be held that the trial judge committed error in not directing a verdict in favor of the defendant upon the third count of the plaintiff's declaration. The plaintiff expressly testified that there was no flagman or watchman on duty at the crossing at the time of the collision; that no agent or servant of the company gave any signal or warning of the approach of the train whatever. He also offered evidence tending to show that the train was moving at the time of the collision, at a speed in excess of that prescribed by the ordinance. Several witnesses testified that the train was moving at the rate of from ten to twelve miles an hour at the time it collided with the plaintiff's automobile. In view of this evidence, it is manifest that the trial judge acted properly in not directing a verdict in favor of the defendant.

There can be no constitutional exercise of the power to direct a verdict in any case where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried, but the case must go to the jury. *Tennessee Central R. R. Co.* v. *Morgan,* 132 Tenn., 1, 175 S. W., 1148; *Norman* v. *Southern R. Co.,* 119 Tenn., 401, 104 S. W., 1088; *Kinney* v. *Y. & M. V. R. R. Co.,* 116 Tenn., 450, 92 S. W., 1116.

In considering defendant's motion for a direct verdict, that view of the evidence most favorable to the plaintiff's case must be taken by the court, and, if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Nashville v. Reese,* 138 Tenn., 471, 197 S. W., 492, L. R. A., 1918B, 349.

It is true that there was a conflict in the evidence. The defendant offered evidence tending to show that it had two flagmen on duty at the crossing at the time of the collision, and that one of these flagmen was preceding the train across at the time, and as required by the ordinance herein referred to; that when the front car had reached a point near the west side of the crossing the plaintiff, who was operating his automobile at a high rate of speed, to wit, twenty-five or thirty miles an hour, attempted to cross immediately in front of the train, by swerving his car to the right, and in so doing his automobile was struck by the front box car. The jury have resolved this disputed question of fact in favor of the plaintiff's contention, and its finding is binding upon this court.

Nor do we think the defendant's contention is well taken that the plaintiff was guilty of contributory negligence, and that the court of civil appeals should therefore have held that the trial judge erred in not directing a verdict in his favor on this ground.

We think this was a question properly determinable by the jury under proper instructions from the court. The court instructed the jury on this question as follows:

"Now, it was the duty of the plaintiff here to exercise ordinary care for his own safety, that is such care as you would expect from an ordinarily prudent person situated as he was there at that time and place, operating an automobile as he was. It was his duty on approaching that railroad track to use his senses of sight and hearing, and if he saw that train approaching or upon the crossing, or if he could have seen it by the exercise of ordinary care and tried to run around it, to run in front of it, when an ordinarily prudent man would not have done it, then he would be guilty of contributory negligence, and if that proximately contributed to bring about the death of his wife, he cannot recover."

Again, in a subsequent part of his charge, the trial judge instructed the jury as follows:

"On the other hand the defendants, insist that in operating their train they were complying with the terms of this ordinance; that it was not running its train over there at a greater rate of speed than four or five miles an hour; that its watchmen were there, and that one of the trainmen, one of the switching crew, and one of the watchmen preceded the train across the crossing, and that, after the train became an obstruction at the crossing, over the crossing the plaintiff in his automobile approached, running at a negligent and rapid rate of speed, at an unlawful rate of speed, and undertook to run around the train, and ran over where the curb was in order to get around, and that while he was trying to get around he was struck by the train and pushed down the track, and his wife was killed. Now, gentlemen of the jury, if you believe from the evidence that the de-

fendants' contention is true, or if the plaintiff by the greater weight of the evidence has failed to show you that it is not true, then the plaintiff, is not entitled to recover, and your verdict should be in favor of the defendants.   How the facts are is for you to determine. You are the exclusive judges of the facts, the weight of the evidence, and the credibility of the witnesses.   You will take the law as given you in charge by the court.''

Where there is a controversy in respect of the facts upon which the defense of contributing negligence is predicated, the question should be submitted to the jury. *La Follette, etc., R. Co.,* v. *Minton,* 117 Tenn., 415, 101 S. W., 178, 11 L. R. A. (N. S.), 478; *Railroad* v. *Bohan,* 116 Tenn., 271, 94 S. W., 84;  *Knoxville* v. *Cox,* 103 Tenn., 368, 53 S. W., 734;  *Robertson* v. *Cayard,* 111 Tenn., 356, 77 S. W., 1056.

We think the charge very fully presented the defendant's contention of contributory negligence to the jury; in fact, the charge on this question was more favorable to the defendant than the law warranted.   The declaration avers, and the evidence shows, that, in addition to the plaintiff (her husband) Mrs. Partridge left surviving her three minor children, and under chapter 86 of the Acts of 1897, carried into Shannon's New Code at sections 4029a1 and 4029a2, the damages recoverable go to the plaintiff and said children equally. The children of the deceased were in no way at fault in the matter of their mother's death, and the fault of the plaintiff could not prejudice their rights.   Only the beneficiary, whose negligence proximately contributed to the accident, is barred. *Z. E. Anderson, Administrator* v. *Memphis*

*Street Railway Co.,* 227 S. W., 39, decided at the present term of the court. Opinion for publication.

Furthermore, the trial judge, in his second instruction on the question of the plaintiff's contributory negligence hereinbefore set out, placed the burden of proof upon the plaintiff to show by the greater weight of the evidence that he was not guilty of contributory negligence in crossing the track of the defendant upon which its train was moving. This was error against the plaintiff. The burden of proof was on the defendant to show such negligence.

By chapter 36 of the Acts of 1917, the drivers of automobiles, crossing a railroad track at grade on public roads, are required to come to a full stop at a distance of not less than ten nor more than fifty feet from the nearest rail of said track before crossing, and their failure to do so is made a misdemeanor.

The trial judge was requested by the defendant to charge the jury that if they should find from the evidence that the crossing at which the accident occurred was at grade, and that there was no flagman or watchman protecting the crossing, it was the duty of the plaintiff to have stopped his automobile at a distance of not less than ten nor more than fifty feet from the nearest rail of the railroad track which he was approaching, and upon which the train was being operated, and if he failed to do so before undertaking to cross the track, he was guilty of negligence *per se,* or negligence as a matter of law, and that if this negligence on his part contributed proximately to the accident in any degree, the plaintiff could not recover.

We do not think that chapter 36 of the Acts of 1917 has any bearing on the plaintiff's right to recover. The act expressly provides that none of its provisions "shall be construed as abridging or in any way affecting the common-law right of recovery of litigants in damage suits that may be pending or hereafter brought against any railroad company or other common carrier."

We think this provision of the statute cuts off the right of the defendant to rely on its violation by the plaintiff as negligence which could in any manner affect his right to recover.

It is next urged by the defendant that the court of civil appeals erred in not holding that the trial judge should have submitted in charge to the jury a number of other special requests offered by the defendant bearing upon the question of the plaintiff's contributory negligence.

There are nine of these requests, and we have considered each of them, and are of the opinion that it was not error to refuse them. We think the court fully instructed the jury upon the question of the plaintiff's contributory negligence, and, as before stated, the charge upon that question was more favorable to the defendant than he was entitled to.

It is next insisted that the trial judge committed error in instructing the jury on the measure of damages. The jury was instructed on this point as follows:

"If you find in favor of the plaintiff, it will be your duty to fix the amount of his recovery. The measure of the recovery would be reasonable compensation for the life of the deceased. In determining that, take into

consideration her age, the state of her health, her expectancy of life, of a person of her state of health and age, and let your verdict be for reasonable compensation. If you find for the defendant, you will so state, without more.''

It is said that the trial court should have charged the jury that the measure of damages was the pecuniary value of the life of the deceased, and not any sentimental value which the jury might place on the deceased's life, and, further, in arriving at the value of the life, it should be taken into consideration that at best the duration of life is uncertain.

We are of the opinion that while this instruction was not strictly accurate, in that it failed to tell the jury that the plaintiff could only recover for the pecuniary value of the deceased's life, still we cannot see wherein the defendant was prejudiced. We do not think that the verdict is in any sense sentimental. It is not for more than the reasonable pecuniary value of the deceased's life when her age and state of health are taken into consideration. It is true that her life expectancy was not shown, but it was shown that she was only thirty-four years of age, and was in good health. Therefore she necessarily had a long life expectancy, and, in view of the proof, we do not think it can be said that the verdict was in any sense the result of sentiment, nor do we think it is excessive.

The judgment of the court of civil appeals will therefore be reversed, and the judgment of the circuit court will be affirmed, with costs.