## ILLINOIS CENTRAL RAILROAD COMPANY et al. v. J. J. BEAVER.

Western Section.   December 22, 1925.

Certiorari denied by Supreme Court June 19, 1926.

1. **Negligence.   Switching crew guilty of negligence in shunting cars down spur track without first ascertaining if there were obstructions on the track.**
Where switching crew shunted cars onto switch where workmen were working and brakeman was riding between cars and not where he could keep a proper lookout, held not the exercise of ordinary care and caution and constitutes negligence.

2. **Negligence.   Contributory negligence.   Where the evidence is uncontroverted, contributory negligence becomes a question of law for the court.**
Where there is no conflict in the evidence as to the conduct of the plaintiff at the time he received the injuries complained of, and the facts and circumstances relative thereto are uncontroverted, it resolves itself into a question of law for the court as to whether under such facts the plaintiff is guilty of contributory negligence so as to bar him from a recovery in a common-law action.

3. **Trial.   Directed verdict.   Verdict must be directed for defendant where plaintiff's undisputed evidence shows him guilty of contributory negligence.**
Where under the undisputed facts of the case the plaintiff was guilty of negligence which was one of the direct causes of his injury held the trial court as a matter of law must direct a verdict for defendant.

4. **Evidence.   Evidence held to constitute contributory negligence that would bar recovery by plaintiff.**
Where plaintiff was at work on a pole that was supported by a guy rope tied to railroad rail and he knew that cars were put in and taken off of that track and that no one was watching for him and for more than half an hour he never looked in the direction from which cars would come, held negligence that would bar his recovery.

5. **Negligence.   Last clear chance.**
The last clear chance doctrine held not to apply where train crew did not see defendant's peril until too late to avoid it.

Appeal in error from Circuit Court, Shelby County; Hon. H. W. Laughlin, Judge.

Reversed and dismissed.

Siveley, Evans & McCadden, of Memphis, for plaintiff in error.

Scott Fitzhugh, of Memphis, for defendant in error.

SENTER, J. This is an action for damages by defendant in error against the Illinois Central Railroad Company and Y. & M. V. Railroad Company, plaintiffs in error, to recover damages for alleged personal injuries sustained as the result of the alleged common-law negligence of plaintiffs in error. The suit resulted in a judgment in the court below in favor of defendant in error for the sum of $4,500.

For convenience we will refer to the parties in their original status of plaintiff and defendant.

At the conclusion of plaintiff's evidence the defendant moved for a peremptory instruction, which motion was by the court overruled. At the conclusion of all the evidence the defendants renewed the motion for a peremptory instruction in favor of defendants, which motion was likewise overruled by the court.

A motion for a new trial was made by defendants and this motion was also overruled, and from the action of the court in overruling the motion for a new trial and rendering judgment on the verdict of the jury against defendants, the defendants have appealed to this court and have assigned numerous errors.

We find the facts as disclosed by the record to be as follows: At the time plaintiff received the injuries complained of he was employed by the Buffalo Construction Company, which company was erecting a large cotton seed house for the Valley Cotton Oil Company on its property in the City of Memphis; plaintiff's duties as a laborer on said building consisted in part of erecting certain center and side posts for the support of the roof of the building, and he was employed as a rigger. At the time of his injuries he was on or near the top of the center pole about forty-five feet high. It appears that this center pole was movable. In order to hold the center pole or post in position it was supported by guy ropes. One of the guy ropes was fastened to the railroad iron of a spur track which passed along six or eight feet north of the north end of this building. At the time of the accident resulting in the injuries to plaintiff, this guy rope was fastened to the south rail of the spur track by being passed under the rail between the ties and attached to an iron bar so as to hold the rope without passing over the rail. It was so attached to the rail that in extending up to the post it was at such an angle as to be struck by a passing car, that is a passing car would not clear the rope. It appears that this spur track only served the Valley Cotton Oil Company, and at the time of the injury to plaintiff the spur track was only used for bringing in car loads of materials used in the construction of the building,

and in taking out the empty cars after the same had been unloaded. The building had been under construction for three or four weeks, and during which time cars were brought in on this spur almost daily, and the empty cars taken out. This guy rope supporting the center pole on which plaintiff was at work was moved or slackened frequently so as to permit the change of the location and position of the center pole, about every hour. Prior to the day before plaintiff received his injuries, this guy rope had been attached to the rail of another switch track immediately north of the track where it was attached at the time of the injury, but on the day preceding the day on which plaintiff was injured the rope had been moved and attached to the south rail of the spur that ran nearest the building being constructed and had not been moved or changed that morning. Plaintiff had been on or near the top of this center post about thirty minutes, when two gondola cars loaded with cinders for this plant were shunted or kicked from the lead track several hundred feet east of this building, and by their own momentum rolled down this spur track and against the rope attached to the south rail of the track, breaking the rope and causing the pole to fall resulting in the injuries sustained by plaintiff. When these two cars were detached from the engine and shunted or kicked onto this spur track a switchman was placed on the cars for the purpose of stopping the cars at the proper place for unloading. The switchman was standing on a platform or beam between the two cars because of the location of the brakes of the respective cars, and so that he could operate the brakes of the two cars from that position. The cinders were piled onto these cars in a way so that the view of the switchman standing on the ledge or platform between the cars was so obstructed he could not see down the track, except by leaning and looking around the edge of the front car.

There was no person on the ground to observe the approach of cars bringing materials for this building, and to be on the lookout for cars coming in onto this siding. It appears that a few days before this accident, and while this guy rope was stretched across this spur track to another track immediately north, a switching crew bringing a car of materials in on this particular spur assisted in loosening the guy rope so that the car could pass underneath it, but it is not shown that this particular switching crew knew that the guy rope was fastened to the track. It is shown that the defendants railroad companies employed numerous switching crews, about sixty, in its yards in Memphis, and no particular crew was assigned to the switching and the placing of cars to the several respective industrial plants served by the numerous switches and spurs and side tracks of the defendants. It does appear, however,

that when cars were to be taken out of this spur track after having been unloaded, it was the custom of those in charge of the switching operations to have some of the switching crew to go in advance of the engine and notify any employees of the construction company working in or about the cars that they were about to be moved, or to see that there were no employees in the cars before attaching the engine and taking them out. Plaintiff in his testimony, states that he knew that one of the guy ropes supporting the pole on which he was at work was fastened to the railroad track in the way and manner described; that he had been on the pole about twenty or thirty minutes when the rope was torn loose causing the pole on which he was at work to fall; that he never at any time saw the cars until after he was injured; that he was not paying any attention to the track, and that he was facing the west, the opposite direction from which any cars could come onto the track; that he had not noticed other cars coming in on this spur track during the four days that he had been employed on the building, but knew that cars loaded with materials for the building were being delivered on this spur track. He did not claim to have ever seen or to have known of any of the switching crew to go in advance of the cars to notify the workmen that the cars were being brought in. He did not claim that he knew or thought that any person was stationed on the ground to keep a lookout for cars while he was at work on the center pole.

It also appears that there were not any cars on this spur track. or other obstructions at the time these two cars were shunted onto this spur, except the guy rope which was fastened to the south rail. The switchman on these two cars did not see this guy rope until the front end of the front car struck it. The rope was an inch and a quarter or an inch and one-half rope.

It is alleged in the declaration, that the spur track to which this rope was attached was on the property of the Valley Cotton Oil Company, and that this track was the property of the Valley Cotton Oil Company, but there is no evidence in the record to sustain this contention of plaintiff. We think that it is fairly inferable that this spur only served this particular industrial plant. It was one of several spur tracks and side tracks and switches that left the main switching track known and referred to as the "river lead" track. It intersected with this river lead track at a point several hundred feet east of the property of the Valley Cotton Oil Company, running west to a point about thirty to fifty feet west of the west line of the Valley Cotton Oil Company's property, and at the west end it was not connected with any other track. The property east of the Valley Cotton Oil Company's property to the point where this spur intersected with the lead track passes other property, but which is vacant. It passes along in front of the Valley

Cotton Oil Company's property, on the north side, six or eight feet north of the north end of the cotton seed house.  It also appears that the employees of the construction company engaged at work on the building unloaded the materials from the cars as the same were brought in on this spur, and it also appears that at times some of the laborers employed about the building used the spur track in cutting and sawing materials.  But it does not appear that such use of the track was known to the defendant railroad companies.

We think that the switching crew in shunting these cars down the spur track without first ascertaining if there were obstructions on the track, and especially since the brakes of the cars were not on the front end where the brakeman could keep a proper lookout, did not exercise ordinary care and caution, and their failure so to do was negligence that contributed as one of the proximate causes of the injury to plaintiff.

The next question to be considered is with reference to the action and conduct of the plaintiff at and before the time he received his injuries.

There seems to be no conflict in the evidence on this question. His statement of the way and manner in which he received his injuries is not contradicted,* and may be taken as the facts in the case so far as his conduct is concerned.

The second assignment of error goes to the action of the court in refusing to grant defendants' motion for a peremptory instruction at the conclusion of the evidence, on the ground that under the uncontroverted and undisputed evidence, plaintiff was guilty of such contributory negligence as would bar a recovery.

There is no conflict in the evidence with reference to the conduct of plaintiff.  It then becomes a question as to whether the evidence of plaintiff, when viewed in its most favorable light to plaintiff, would entitle him to a recovery in this case.

The following facts as testified to by plaintiff, and about which there was no conflict in the evidence, present the whole question as to whether or not, as a matter of law, he was guilty of negligence that contributed as one of the proximate causes to his injuries. He knew that one of the guy ropes supporting the pole on which he was at work was attached to the railroad iron; that it was so attached on the day before and had not to his knowledge been removed; that while he was at work on the pole he had his back to the east, the direction from which cars must come in the event any cars were brought in on this spur; that during the entire time he was on the pole he did not look toward the east to see if any cars were about to be brought in on this track; that he knew that the rope was an obstruction on the track and if struck by a car that it would result in the pole on which he was at work falling.  He states that he paid no attention to the track, and did not know

whether any person was kept on the ground to look out for cars. He does not state that he knew of any custom of the switching crews to precede cars down the switching track to warn those on the track of danger. He does not claim in his testimony that he relied upon any such custom, or that he knew of any such custom.

Now, under these facts as testified to by plaintiff, and about which there is no conflict in the evidence, the question is presented under the second assignment of error, and for the determination of this court, whether under these facts the defendant was in the exercise of ordinary care and prudence at the time he received the injuries; whether under these facts the plaintiff was guilty of negligence, as a matter of law, which contributed as one of the direct and efficient and proximate causes of the injuries sustained.

We think it well settled, at least in this state, that where there is no conflict in the evidence as to the conduct of the plaintiff at the time he received his injuries complained of, and the facts and circumstances relative thereto are uncontroverted, it resolves itself into a question of law for the court as to whether under such facts the plaintiff is guilty of contributory negligence so as to bar him from a recovery in a common-law action.

In Kinney v. Railroad, 116 Tenn., 451, it is said: "There is no power in the trial judge to direct a verdict in any case in which there is a dispute as to any material, determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried."

In Traction Company v. Brown, 115 Tenn., 329, 89 S. W., 320, it is said: "A motion for peremptory instruction is not one which addresses itself to the discretion of the court, but one which presents a question of law; and the crucial question in the case is whether there is any determinative evidence upon which the jury must base a verdict in favor of the party which produces it."

In the case of Tyrus v. Railroad, 114 Tenn., 593, this statement is made by the court: "The following we conceive to be a sound statement of the matter within the restrictions of our constitution: Where there is no controversy as to any material fact there is nothing for the jury to find. The question is then one solely of law for the court, and in such a case the court may instruct the jury to return a verdict in accordance with his view of the law applicable to such ascertained or uncontroverted facts. There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence."

In Norman v. Railroad, 119 Tenn., 422-23, the court quotes approvingly from Traction Company v. Brown, supra, as follows: "When a given state of facts is such as reasonable men may fairly differ upon the question as to whether there was negligence or not,

the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court.''

If there is any dispute in the evidence as to material facts the question must be presented to the jury, and the court would not be warranted in determining any controverted or disputed facts. Railroad v. Morgan, 132 Tenn., 7.

In passing on a motion by a defendant for a peremptory instruction in its favor, it must be assumed that the evidence of plaintiff's witnesses is true. Knoxville v. Cain, 128 Tenn., 250.

''Where a defendant establishes by incontrovertible proof a fact which disentitled plaintiff to a recovery, the court should direct a verdict, notwithstanding the rule, that when a motion therefor is made all presumptions must be indulged in favor of plaintiff'' . . . ''Where from the facts thoroughly shown one conclusion only is deducible, or if all the evidence tends to the one conclusion, the case should be taken from the jury.'' Tennessee Copper Company v. Simpson, 6 App. Cas. 536; Brickwood's Sackett Instructions to Juries, sec. 251.

In considering defendant's motion for peremptory instructions, that view of the evidence most favorable to plaintiff's case must be taken by the court. Nashville v. Reese, 138 Tenn., 471; R. R. v. Morgan, 132 Tenn., 1; Hines v. Partridge, 144 Tenn., 219; Wildman Mfg. Co. v. Davenport, etc., 147 Tenn., 551.

Appellee in his brief has cited and quoted at length from the case of Louisville & Nashville R. R. Company v. Williams, 62 So. 697 (Ala.). This case is reported in Negligence Compensation Cas. Ann., Vol. 4, pages 182-202. An examination of that case presents a very different situation from the case now under consideration. In that case it appears that the spur track upon which the cars were shunted ran through the plant of a lumber company, extending through the yards of the lumber company, where the saw mill of the lumber company was located on one side of the spur and its planing mill on the other. The employees of the lumber company had frequent occasion to cross, and to be in and about and on this track continuously in the performance of their duties, as stated in the opinion in that case, ''on an average of one every minute during the day.'' The operation of the saw mill and the planing mill and other machinery of the lumber company made such noise that the employees could not hear freight cars rolling down the track. It also appeared in that case that the conductor of the local freight at the time plaintiff received his injuries was fully informed as to all these conditions; that he frequently had cars placed on this spur running through this lumber yard and plant; that it was the fixed custom and practice of this same conductor and train crew to have

some trainman go in advance of cars when they were about to be shunted in or pushed in to warn the employees of the lumber company, but on the occasion that plaintiff in that case was injured, the car was shunted in on the track of this lumber company without any person being sent in advance to warn the employees. In that case it was held that the employees of the defendant railroad company under the facts and circumstances were guilty of gross negligence. However, as above stated, we do not think the facts of that case are at all analagous to the present case.

Without a further review of the authorities and cases, we are constrained to reach the conclusion that under the undisputed facts of this case with reference to the action and conduct of the plaintiff at the time he received his injuries, when treated in the most favorable aspect for the plaintiff, and taking the plaintiff's own testimony as to his actions and conduct, that the plaintiff was guilty of contributory negligence, and was not in the exercise of ordinary care for his own safety, and that his contributory negligence continued to the time of his injuries, and was one of the direct causes of the injuries which he sustained, together and concurrently with the negligence of the defendants. In the case of Grigsby v. Bratton, 128 Tenn., 597, 603, it is said by the court: "Assuming that the defendant was negligent, we are of the opinion that plaintiff's negligence continued to operate concurrently at the time of the accident in producing it; that there was no independent, self-supporting act of defendant that solely caused the injury, or so came into operation as to make plaintiff's negligence remote."

In the same case the court further states: "Where the plaintiff and defendant are thus guilty of acts of negligence which together constitute the proximate cause of the injury, then the negligence of plaintiff, however slight, bars a recovery." The above language is quoted and approved in the case of Todd v. Railroad, 135 Tenn., 95.

We will add that we do not think the facts of this case admit of the application of the last clear chance doctrine. We cannot say under the facts of this case that the defendants were guilty of gross negligence, but as above stated, we are of the opinion that the plaintiff was not in the exercise of ordinary care and caution. A full and interesting discussion of the last clear chance doctrine is given in the case of Todd v. Railroad, 135 Tenn., 92, and numerous cases cited on this subject.

We are of the opinion, that there being no conflict in the evidence with reference to the conduct of the plaintiff at the time he received his injuries, there was no question of fact, or dispute, to be submitted to the jury. We think that under the undisputed facts as disclosed by the record, the plaintiff was guilty of contributory negligence as a matter of law which contributed concurrently with the negligence of the defendant, resulting in his injuries. In

this view of the case we are of the opinion that the learned trial judge was in error in overruling and disallowing the motion for a peremptory instruction in favor of the defendants. Having reached this conclusion we think it unnecessary to consider and determine the other assignments of error.

It results that the case is reversed and dismissed. The plaintiff will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.