## C. L. TAPP v. TENNESSEE ELECTRIC POWER CO.

Eastern Section.    February 23, 1929.

Petition for Certiorari denied by Supreme Court, May 25, 1929.

R. T. Wright, Jr., and Tatum, Anderson & Tatum, of Chattanooga, for plaintiff in error.

Brown & Spurlock, of Chattanooga, for defendant in error.

SENTER, J.  The appeal in this case is from the action of the trial judge in sustaining a motion for a new trial, and directing a verdict in favor of the defendant, and dismissing the suit of plaintiff.

For convenience the parties will be referred to as in the court below, C. L. Tapp, plaintiff, and Tennessee Electric Power Co., defendant.

The suit grew out of a collision between one of the trolley cars of the defendant and the automobile driven by plaintiff at a street crossing in the suburbs of Chattanooga, resulting in the alleged injuries and damage sustained by plaintiff.  The declaration alleged the negligent operation of the trolley car by defendants agent, servant and employee, as the direct, proximate and efficient cause of the collision.  The negligent acts alleged in the declaration were the excessive rate of speed at which the trolley car was being operated, and the failure of the motorman to give the signals indicating the approach of the car.

To the declaration and the amended declaration, the defendant pleaded the general issue of not guilty, and also the contributory negligence of the plaintiff.

At the conclusion of plaintiff's evidence the defendant moved the court for a directed verdict in its favor, which motion was by the court overruled and disallowed. At the conclusion of all the evidence, the defendant again moved the court for a directed verdict in its favor, which motion was likewise overruled and disallowed. The jury returned a verdict in favor of plaintiff in the sum of $5,000 and costs. The defendant filed its motion for a new trial, and for a directed verdict in its favor. This motion for a new trial was granted, and the court directed a verdict in favor of the defendant and dismissed the suit of plaintiff. To this action of the court the plaintiff excepted, and moved for a new trial. This motion was overruled, and from the action of the court plaintiff has appealed to this court, and has assigned errors.

The several assignments of error present but the single question, and that is was there any material evidence that would warrant the case going to the jury.

It appears from the record that on February 24, 1927, the plaintiff, who lived at Cloud Springs, Georgia, and worked in the City of Chattanooga, Tennessee, was traveling from his home to his place of employment in Chattanooga, in a Ford coupe. At the time of the collision plaintiff approached the street car tracks where the same crossed avenue ''Q,'' and while in the act of crossing the street car track the street car struck the Ford coupe. At the point of collision the street car track is straight for a distance of about 700 feet, and no obstructions. The avenue ''Q'' does not cross the track at right angles. The general direction of the carline at the point of the accident is southeast and northwest, and the direction of avenue ''Q'' is north and south. The street car was going in a northerly direction from Oglethorp to the City of Chattanooga, and the plaintiff was driving in a southerly direction. It appears that the surface of the ground is comparatively level, except a slight incline where the avenue crosses the car line.

The plaintiff testified that when he reached a point seventy feet from the crossing he saw the trolley car which was then at a switch about 464 feet from the crossing; that he was driving the automobile at a slow rate of speed, ten or twelve miles per hour. Plaintiff testified further that he proceeded to the crossing at about the same rate of speed, and that when he was just entering upon the crossing he again observed the street car and that it was then at a point 170 feet from the crossing, and that in this situation he attempted to cross in front of the approaching car and was struck by

the car before the automobile cleared the rail, resulting in the injuries complained of.

There was a decided conflict in the evidence with reference to the rate of speed at which the trolley car was traveling, and the distance the same ran after the collision, and on other matters, but for the purposes of the questions made on this appeal, the evidence must be taken in its strongest and most favorable aspect to the plaintiff's case. There is some evidence that the street car was running at a rate of speed of thirty-five or forty miles per hour as it approached this street crossing and did not slacken its speed; there is also some evidence, though negative in form, that the motorman in charge of the street car did not ring the bell or give any other warning of the approach of the street car. This would constitute some evidence of negligence on the part of the motorman, and in the absence of any evidence of contributory negligence on the part of the plaintiff, would entitle the plaintiff to have the question of the negligence of the defendant submitted to the jury under a proper instruction from the court. (Illinois Central R. R. Co. v. Beaver, 3 Tenn. App., 67.)

It is well settled that if there is any dispute in the evidence as to material facts the question must be presented to the jury, and the court would not be warranted in determining any facts where there is a conflict in the evidence. (R. R. v. Morgan, 132 Tenn., 7.)

In passing on a motion by a defendant for a peremptory instruction in its favor, it must be assumed for the purposes of the motion that the evidence of plaintiff's witnesses is true. (Knoxville v. Cain, 128 Tenn., 250.)

In considering defendant's motion for peremptory instructions, that view of the evidence, most favorable to plaintiff's case must be taken by the court. (Nashville v. Reese, 138 Tenn., 471; R. R. v. Morgan, 132 Tenn., 1; Hinds v. Partridge, 144 Tenn., 219; Wildman Mfg. Co. v. Davenport, etc., 147 Tenn., 551.)

It is equally settled that where there is no conflict in the evidence, or where under plaintiff's strongest and most favorable showing, his conduct shows unmistakable contributory negligence, then the question of negligence is one for the court and entitles the defendant to a peremptory instruction. (Illinois Central R. R. Co. v. Beaver, supra; Knoxville v. Cain, supra.)

In the case of Tenn. Copper Co. v. Simpson, 6 App. Cas. 536, it is said:

> "Where a defendant establishes by incontrovertible proof a fact which disentitles plaintiff to a recovery, the court should direct a verdict, notwithstanding the rule, that when a motion therefor is made all presumptions must be indulged in favor of plaintiff. . . .

". . . Where from the facts thoroughly shown, one conclusion only is deducible, or if all the evidence tends to the one conclusion, the case should be taken from the jury. (See also Brickwoods Sackett Instructions to Juries, Sec. 251.)

With the rule as above stated, it becomes important that we carefully scrutinize and analyze the evidence of plaintiff, and consider the same in its most favorable light, to determine whether under his own statement of the transaction he was guilty of contributory negligence as one of the proximate and direct causes of the collision. If he was, there should have been a directed verdict in favor of the defendant, if not, the case should have been submitted to the jury. The material portion of the testimony of the plaintiff, and his version of the facts, taken from his examination in chief and from his cross-examination as to the actual occurrance, is as follows:

"Q. Now you say that when you saw this car and you were out there at a distance of seventy feet, this car was in the side track down there? A. Yes, sir.

"Q. How far beyond the switch was it? A. Well, to the best of my judgment, it must have been a half of a telegraph pole.

"Q. And they are ninety-eight feet apart? A. Yes, sir.

"Q. As you drove on did you keep a lookout for the car? A. Yes, sir.

"Q. Did you see the car? A. Yes, I saw the car when it was at the second pole above the crossing and my front wheels was between the rail.

"Q. As you drove on the track you say that it was even with the pole that you have marked No. 4? A. Yes, sir.

"Q. How far is that from the center of the road there? A. It is 170 feet.

"Q. How fast was this car apparently coming, according to your best judgment, just as you saw it at that pole? A. Well, I did not realize how fast the car was coming because it was coming meeting me.

"Q. Was it coming fast or slow? A. It was coming fast.

"Q. Give your best estimate as to how fast it was coming. A. Well as I say when I drove on the track I did not think that it was going to hit me and I did not know how fast it was coming, but it must have been coming at least thirty-five miles an hour.

"Q. Was the car ringing any bell or gong, or did it blow any whistle or give you any warning of its approach? A. No, sir."

The witness had previously testified that he first observed the street car when he was at a point seventy feet from the crossing. He had also testified that the street car was at that time about

464 feet from the crossing. On this subject the witness testified as follows:

"Q. As you approached the crossing, where were you when you first observed the street car? A. I was about seventy feet of the track when I first saw the street car and it was in the switch.

"Q. About how far is the switch from the crossing? A. The switch is about 464 feet.

"Q. Had the street car got out of the switch? A. No, sir."

On cross-examination the witness was asked and answered as follows:

"Q. And you say, I believe, that you saw the car when you were seventy feet from the street car track? A. Yes, sir.

"Q. And you were upon a grade there? A. Yes, sir.

"Q. How much of a grade was it? A. Well, it is a pretty good grade.

"Q. There is a fill in the road there? It was what you call a steep grade? A. Well, it was a pretty good grade . . .

"Q. And you were within seventy feet of the street car track? A. Yes, sir.

"Q. You saw the street car track. A. Yes, sir.

"Q. You looked and saw the street car? A. Yes, sir.

"Q. Why did you look? A. I looked to see where the street car was.

"Q. You saw the car coming? A. Yes, sir.

"Q. You saw that it was moving? A. Yes, it was moving.

"Q. How fast was it moving? . . . A. Well, I did not pay any attention to the car, but I saw it was moving. . . .

"Q. And you were going about ten or twelve miles an hour? A. Yes, something like that.

"Q. And only had seventy feet to travel? A. Yes, sir.

"Q. And you saw that the street car was then moving? A. Yes, sir.

"Q. And you proceeded on—did you look at the car anymore until you got up there close to the track, did you look at that car any more? A. I looked at the car when my front wheels got on the track.

"Q. I understand that but did you look at that car anymore until you got up at the track? A. I looked at the car when I got up there and my front wheels was in between the tracks there and it was then about that No. 4 post.

"Q. About how far away? A. Well something like 170 feet.

"Q. If you had looked again before you went on the track you could have seen him could you not—there was not anything between you and him—was there any obstruction between you and him? A. No, sir.

"Q. If you had looked before you started over the track in the way the car was coming along there, you could have easily seen it? A. Yes, sir.

"Q. Going up that grade there at the speed that you described thirty-five miles an hour, there was nothing to prevent your seeing him, was there? A. No, sir.

"Q. Did you look anymore after you left that point seventy feet away from the track, up to the time that you got onto the track? A. Yes, I looked just as I was approaching the track.

"Q. You looked just as you approached the track? A. Yes, sir.

"Q. Just before you drove on the track? A. Yes, sir.

"Q. How far away were you then? A. Well, my front wheels was right up by the rails."

The witness also testified that there were no obstructions and that the street car would have been in view from the point where he was when he first observed it up to the time he started to cross the track. In certain of his replies he stated that he thought he could cross the track ahead of the street car without being struck.

We may assume for the purposes of determining the questions made on this appeal, that the above and foregoing evidence of the plaintiff presents the real facts with reference to his conduct before and at the time of the collision.

Appellant contends that the motorman was operating the car in a negligent way and manner, and quotes the rule in 25 R. C. L., p. 1242, and also on page 1250. We fully agree that under the plaintiff's proof the motorman was not exercising ordinary care as he approached this suburban street crossing, and that he should have had the street car under better control. It is not now a question as to whether there was negligence upon the part of the motorman in the operation of the street car at the time of the collision, but the question we now have is as to whether the plaintiff was in the exercise of ordinary care at the time of the collision, or was he guilty of proximate contributory negligence. Appellant relies strongly on the case of Citizens Rapid Transit Co. v. Seigrist, 96 Tenn., 119. In that case the court quotes approvingly from Booth on Street Railways, Sec. 304. This section is as follows:

"As already stated, as a general rule, especially between street crossings, cars have a right of way superior to that of other vehicles and pedestrians, this preferential right to be exercised in a reasonable prudent manner. But this rule does not apply to crossings of tracks at street intersections. Here the car has a right to cross, and must cross the street; and vehicles and foot passengers have a right to cross and must cross the railroad track. Neither has a superior right to the

other. The right of each must be exercised with due regard to the right of the other, and in such a careful manner as not unreasonably to abridge or interfere with the right of the other. This equality of right, however, does not absolve one who is about to cross the tracks from the duty of taking proper precautions to avoid accidents."

We think it well settled that the public has an equal right with the trolley car operator to travel on the streets, and we may add that the public has the same right to the use of the street crossing that the street car operator has, and that both users are required to exercise ordinary and reasonable care and prudence in the use of such crossings. The street car operator should have his car under such control as to prevent collisions at street crossings by the exercise of proper care and diligence. But, as stated in the authority above quoted from, this "does not absolve one who is about to cross the tracks from the duty of taking proper precautions to avoid accident." In the Seigrist case we have an interesting discussion of the whole subject, and in that case, on the subject of the contributory negligence of the driver of the vehicle, the court says:

"Contributory negligence is not imputable to the driver of a vehicle that collides with an electric street car running at a reckless rate of speed, at a grade crossing, upon a public street or highway, where he, from a point only ten yards from the crossing, looked for the car and saw it approaching rapidly some 200 to 250 yards away, and believing that he had sufficient time to cross the track in safety, proceeded to do so without again looking, assuming that the car would approach the crossing in a lawful manner."

In the same case the court reannounced the rule to the effect that persons crossing street railroads at grade crossings of streets or other public highways, are not required to exercise the same degree of care as that required of persons at like crossings of steam railroads.

It is insisted by appellee that the present tendency of the courts is to require persons traveling in vehicles to exercise the same degree of care in crossing street car tracks, especially in suburban or country territory, as is required of them in crossing steam or commercial railroad tracks at street or highway crossings, and especially when traveling in automobiles.

In support of this contention the case of Stem v. Interurban Railway., 142 Tenn., 496, is cited and relied upon. In this connection it is further insisted by appellee that the law imposes upon persons driving automobiles the duty to stop, look and listen, before crossing the tracks of a street car line, or an interurban electric line just as in the case of crossing a steam railroad line. We do

not understand this to be the rule or degree of care required. While both electric car tracks and steam car tracks are considered admonitions of danger, yet the control of a street car or interurban trolley car is very different from that of a steam locomotive. The trolley car may be stopped in a much shorter distance than the steam locomotive drawing a heavy train of cars. This rule is clearly recognized in the Seigrist case, and we find nothing in the Stem case that is in conflict with the holding in the Seigrist case on that subject. However, we think it also the recognized rule that persons traveling in automobiles or other vehicles are required to exercise ordinary care for their protection at grade crossings, and ordinary care is such care and caution as ordinary prudence would dictate in the circumstances and situation.

In Stem v. Interurban Ry., supra, it was held that the Tennessee statute for the prevention of accidents, usually referred to as the Statutory Precautions Act, applied to an interurban trolley commercial line in the same way and manner as to a steam operated line, and held that the same statutory precautions are imposed upon the operators of the trolley line, which traverses country territory and is engaged in the carriage of passengers, express, and freight, and the only difference being the motive power employed. In that case the suit was for the death of a guest riding in an automobile at a grade crossing, but not on a public highway. In that case the court clearly recognized the duty of the driver of the automobile to stop, look, and listen before attempting to cross the tracks of the interurban trolley line. The court also recognized the rule requiring passengers or guests in an automobile to observe proper precautions for their own safety. In that case it appears that the guest, a lady who was riding in the automobile and who was killed as the result of the collision, was not looking forward at the time of the collision, but that she had turned in her seat and was engaged in conversation. However, the court further held that because of certain obstructions along the road which cut off the view so that the approaching trolley car could not have been observed or seen had she been looking in that direction, would excuse her for her failure to be on the look-out, or would at least make it a question for the determination of the jury. Speaking on the subject of the contributory negligence of the deceased, the court said:

> "With reference to the contributory negligence of the deceased, we are of the opinion that this issue should also have been submitted to the jury. That the negligence of the driver of the automobile cannot be imputed to the deceased is too well settled to require the citation of authority. It is likewise true that one occupying a vehicle as a guest cannot rely upon the

care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety; this obligation is a continuing personal one. It is shown in the evidence here 'that at the time of and immediately prior to the collision, the deceased was exercising no care to ascertain the existence of the railway track or the approach of the car. This would, nothing else appearing, preclude any right of recovery by her administrator. There is, however, evidence in the record tending to show that on account of obstructions along the route traversed by the automobile, to have looked and listened would not have warned her of peril. To look and listen for cars at a crossing is a positive, fixed duty, when by such precautions they may be seen or heard, and in such cases a failure of observance will bar recovery. Where, however, in exceptional cases because of conditions not created by, nor under the control of the traveller, these precautions would not apprise one of danger, their exercise may be excused.''

It is true that in the Seigrist case the court said that contributory negligence is not imputable to the driver of an automobile that collides with an electric street car running at a reckless rate of speed, at a grade crossing, upon a public street or highway, where the driver when at a point only ten yards from the crossing looks and sees a street car approaching at a distance 200 to 250 yards from the crossing, and that in that situation the driver of the automobile could well assume that he would have time to cross before the street car, running at the usual rate of speed, could reach the crossing. Appellant relies very strongly upon this holding in the Seigrist case, and insists that the facts are almost identical. We cannot agree to this contention. In this case the driver of the automobile was seventy feet from the street car crossing the last time he looked before reaching the crossing, and when he was at a distance of seventy feet the street car was about 460 feet from the crossing. He never looked again until he got either onto the crossing between the rails or at a point right against the rail of the track, when it was too late. In this connection it is to be observed that plaintiff states that the street car was 170 feet from the crossing when he was in the center of the track, and that he was going about ten or twelve miles an hour, and the street car was running at the rate of about thirty-five miles per hour. This could not be an accurate statement of the distance that the street car was actually from the crossing since it would have been physically impossible for the street car to run a distance of 170 feet at thirty-five miles per hour, or even at a greater rate of speed, while the plaintiff's automobile was traveling the six or seven feet necessary to clear the crossing. However this may be, we are of the opinion

that the facts of this case are quite different from the facts in the Seigrist case. There is a vast difference in one being warranted, in assuming that he could travel a distance of thirty feet while the street car was traveling from 600 to 750 feet, from the case of the driver being seventy feet and the street car only having to travel 460 feet. In the first instance the street car would have to travel at a very unusually high and rapid rate to reach the crossing before the automobile traveling at a usual rate could cross. While in the present case, according to plaintiff's own statement the street car was running at about thirty-five miles per hour.

In the present case, according to the plaintiff's own statement, he never looked again from the time he was seventy feet from the crossing until he entered upon the crossing, or was just entering upon the crossing and there was nothing to obstruct his view or to prevent his seeing the approaching street car. Certainly, any sort of prudence or care upon his part would have dictated that he at least glance in the direction from which the street car was approaching when he was far enough away from the track to stop his automobile. He stated that he could have stopped the automobile in the space of a few feet at the rate of speed at which he was traveling, to quote his language "about the length of his automobile." If he had looked when he was ten or twelve feet from the crossing he could have stopped. It is not sufficient to say that his reason for not stopping or looking was that he thought he had time to cross the track before the street car could reach the track. When this thought occurred to him he was already on the track or so near it as to make a collision certain. We cannot escape the conclusion that the failure of the plaintiff to look before entering upon the crossing, and to continue on without looking when a safe distance from the track, and knowing that a street car was approaching, showed such a lack of care and caution upon his part as to render his conduct negligent, and that his continuing negligence was one of the direct and proximate causes of the collision resulting in his injuries, and that his negligence, according to his own statement, under all the facts and circumstances and the situation, is so obvious as to constitute a question of law purely for the determination of the court.

In this view of the case we find no error in the action of the court in granting a peremptory instruction in favor of the defendant and dismissing plaintiff's suit. All assignments of error are overruled and the judgment of the lower court is affirmed. Appellant and surety on the appeal bond will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.