FRANK MAY v. LOTTIE E. SKEEN.

Western Section. July 3, 1929.

Petition for Certiorari denied by Supreme Court, March 3, 1930.

W. P. Metcalf, A. H. Murray and J. W. Apperson, all of Memphis, for plaintiff in error.

Ewing, King & King and Fred Toombs, all of Memphis, for defendant in error.

HEISKELL, J.   This is an action by Lottie E. Skeen as administratrix of her father, John A. Hamlett, for his alleged wrongful death, said to have been caused by the negligent operation of a Ford sedan driven by the defendant, Frank May.

The accident occurred on Summer avenue between Hillcrest and Malcolm streets on May 25, 1927, about 8:30 p. m.   The trial resulted in a jury verdict of $7500 in favor of the plaintiff and the defendant has appealed.   The first and second assignments of error are as follows:

"I.

"There is insufficient evidence to support legal liability.

"II.

"The court erred in overruling the defendant's motion for a directed verdict in his favor made at the conclusion, of all the evidence in the cause as follows:

" 'The defendant moves the court for a directed verdict upon the ground that from the whole evidence and from all the legitimate deductions and conclusions to be drawn from it, there is no liability against the defendant in this suit.' "

The declaration is in two counts.   The only difference in the counts is that in the first Frank May is alleged to have been the driver of the auto and in the second an unknown woman is alleged to have been driving under the direction and control of Frank May.

The gravamen of the declaration is that the deceased between 7:30 and 8:30 p. m., it being dark, entered Summer avenue from Hillcrest street on the north, crossed Summer avenue to the south side and then walked east on the south side of Summer about sixty feet toward Malcolm street, when the defendant, driving his auto east on Summer avenue in the same direction, came up from behind the deceased and without any warning whatever, ran over the deceased, knocked him down and inflicted injuries from which he died.

484

It is alleged that the defendant was negligent in not keeping a proper lookout ahead; in not having his car under control; in failing when the danger of the deceased became apparent or should have been apparent to give warning of his approach and in failing to do everything which a reasonable and prudent man would have done under like circumstances to prevent injury to the deceased.

To the declaration, the defendant filed pleas of not guilty and contributory negligence.

It is the theory of the plaintiff, as will be seen from the allegations of the declaration, that while the deceased was walking east down the south side of Summer avenue from where Hillcrest intersects for a distance of sixty feet in plain view of oncoming autos the defendant came along in the same direction behind the deceased and ran over him without giving any warning.

The theory of the defendant however, is that he was driving along at a moderate rate of speed, with his lights burning and keeping a vigilant lookout ahead; that when he had reached a certain point he noticed a man leaning against or over the rear fender of an auto parked on the south side of Summer avenue; that he could not tell what this man was doing; that when he had reached a point a few feet away this man who had been leaning against the auto suddenly and without warning and without looking to right or left, commenced to run or stagger diagonally out into the street directly in the path of his auto; that when this occurred he applied his brakes and did everything in his power to avoid striking the man, but was unable to stop his car before his front bumper hit the man, knocking him to the pavement immediately in front of his car; that his auto stopped with only about one-fourth of the deceased's body under the front end of his car; that the deceased was very intoxicated at the time of the accident, but which fact was unknown to defendant before the time when the deceased staggered in front of the car.

It is either admitted by both sides or else proven beyond controversy, that Hamlett was walking east on the south side of Summer avenue and when about fifty to eighty feet east of Hillcrest street he was struck by a Ford sedan driven east on Summer avenue by defendant, May, at a speed of twelve or fifteen miles an hour, and that his death resulted in about forty days. There was an automobile parked on the south side of Summer avenue and immediately south of the point where Hamlett was struck. This car was headed south of east and rested diagonally partly on the street and partly on the sidewalk space, the left hind fender extending at least three feet over on the paved portion of the street. Just east of where this car was parked, there is a feed store and just east of this is the restaurant of Caddas. East of this are others stores, all on the south side of Summer avenue. In front of all these places of business there is

a concrete sidewalk, but westward from the feed store to Hillcrest street there is a nine foot space prepared for a sidewalk, graded and of proper elevation, but unpaved, having a dirt path on it, used by pedestrians who did not choose to walk in the street. The path was not obstructed. The facts stated may be taken as settled beyond controversy, also that defendant, May, did not sound his horn.

Four witnesses testify for plaintiff as to the accident. Three of them say they saw it from the porch of Caddas' restaurant. B. C. Cox says he was on said porch about twenty feet from where Hamlett was struck, and that point was about ten feet north of the sidewalk. Where sidewalk is spoken of west of the stores, we understand witnesses to mean the space prepared for a sidewalk. This witness says he saw Hamlett walking east on Summer. On cross-examination he says:

"Q. How far back from the point of contact did you first notice the Ford before the accident? A. I didn't notice it before the accident far back at all.

"Q. You didn't notice it before the accident at all? A. No, sir.

"Q. Then when you first say you saw the happening of the accident it had happened? A. Yes, sir."

A. C. McDaniel says he saw the accident from the bench in front of Caddas' lunch room. On direct examination he testified:

"Q. I will ask you in what direction Mr. Hamlett was walking? A. Walking east on Summer avenue.

"Q. Did you see him—see the car strike him? A. I saw the car just as it run against him, I didn't see him as he walked in front of it.

"Q. Mr. McDaniel, how far was the car back of Mr. Hamlett, when you first saw it? A. Well, it was right on him.

"Q. About how far was it back of him? A. About three or four feet.

"Q. About three or four feet? A. Yes, sir."

And on cross-examination:

"Q. Well, now, how long had you seen Mr. Hamlett coming up the street prior to the time you saw the automobile about to hit him? A. About two or three or four feet behind him; not over two seconds if that long.

"Q. You don't know whether he had been walking the whole distance along the south side at that time in the street or not? A. No, sir.

"Q. You don't know whether he came from over here to the side and started out in the street or not, do you? A. No, sir."

He also says that after the accident all of Hamlett's body was out from under May's car except his feet.

L. L. Gill was also on the bench in front of Caddas' place. Parts of his testimony are as follows:

"Q. Did you see Mr. Hamlett before the car struck him? A. I saw the old man behind this other car walking east (referring to parked auto between him and Hamlett).

"Q. Walking east? A. Yes, sir.

"Q. How far was he in front of the car when you first saw him? A. About twenty feet.

"Q. Walking in an easterly direction? A. An easterly direction.

"Q. In front of the Ford that struck him? A. Yes, sir."

. . . . . . . .

"Q. How long did you see him walking along the south side of Summer avenue? A. Just about the time he walked twenty feet I reckon.

"Q. Could you see Mr. Hamlett behind the lights of the car all that twenty feet? A. Not all that twenty feet. That car then knocked me off twelve or fourteen feet.

"Q. So for fourteen feet of the distance your view was knocked off by the car and you didn't see Mr. Hamlett? A. No, sir.

"Q. You say a part of your vision was obstructed down here by the back end of this car? A. Yes, sir.

"Q. But you did have vision to see him—saw him walking here? A. When he first came down this street and came across here then after the car hit."

In other words the parked car obstructed his view for twelve or fourteen feet. He saw Hamlett before this and after the car hit him.

This witness says Hamlett had had a drink or two and he saw some one pull a bottle out of his pocket. When the May car stopped the front wheel was on Hamlett's heel.

The only other witness for plaintiff as to the accident was R. F. Hodges who says he saw it from his house on the west side of Hillcrest nearly 100 feet away. He just happened to glance in time to see the car of defendant strike Hamlett.

About all there is in this testimony is that Hamlett was going east on Summer avenue and May was driving an auto east on the street and ran into Hamlett. There is no evidence of negligence except the inference to be drawn from the fact that May could see Hamlett and did not avoid the accident.

For the defendant four witnesses besides May himself testify as to the accident. May says the parked car stood about three feet in the street. When within thirty feet of this car he noticed a man standing by this car and he thought he was pushing it. He, the defendant, was driving at a rate of twelve or fifteen miles an hour, and just as he

was about to pass him the man ran staggering north and eastward three or four steps, getting in front of defendant's car when it was too late for defendant to stop his car. That as soon as he saw the movement of Hamlett, he put on brakes and made every effort to stop the car and did stop it within a few feet, so that the car merely pushed Hamlett over and stopped with most of Hamlett's body in front of the car. He says if Hamlett had remained by the fender of the parked car, he would have been safe.

Mrs. Minnie McMorris testified that she was in the car with defendant. He was driving. When about thirty feet away saw Hamlett standing with his hand on the fender of the parked car. Then Hamlett left the car, staggering and running in a diagonal direction in front of defendant's car. That May put on his brakes immediately. When Hamlett ran out, he threw up his hands. After the accident she stepped the distance and it was four steps from where the car was parked to where Hamlett fell in the street.

Mrs. Floyd Arrington was in the parked car at the wheel and Bonnie Lowery was with her. Her husband was coming from the barber shop which was just east of Caddas' restaurant. Just before the accident, she heard Hamlett behind their car. He jarred their car, then he took three or four staggering steps diagonally northward going rapidly. Saw the car that hit him about six or eight feet behind him. This witness says:

"Q. State whether or not Mr. Hamlett when he staggered out into the street that way, whether or not he ran into the path of the oncoming automobile? A. Yes, he did. They could not have avoided him to save his neck.

"Q. Do you know whether or not the driver of the automobile applied the brakes in an effort to stop his car? A. He did.

"Q. How do you know that? A. Because he never did run over the man's body; never run up on it; he was not going fast; he stopped right now."

Floyd Arrington says he had started to a picture show with his wife and Mrs. Lowery and had parked his car just at the west end of the concrete walk that is in front of the stores. He then went to the barber shop to get shaved and was returning to his car when he saw the accident. He was about in front of Caddas' place when he saw Hamlett leaning against the left rear fender of his car which was about three feet out from the curb. Giving his own language, in part, he then says:

"The man then left my car in a kind of a running staggering three or four steps like a man might have been when trying to keep from falling on his face—something like that; just three or four steps forward and out from my car.

"The front of Mr. May's car when he stopped, was right about—I say between the front and rear door of my car; that is, taking the cars on Summer avenue as they were sitting.

"Q. Just as soon as the man turned loose he threw up his hands, took three or four steps out in Summer avenue? A. When the man's car struck he would have fell if he had not struck him.

"Q. As a matter of fact he was falling towards the man's car? A. As he fell the car pushed him forward.

"Q. Falling back and just put his hands up in the air? A. I believe he would have if the car had not struck him. I believe he would have fell backwards. Never knocked him anywhere; just pushed him over; never hit him hard enough to knock him."

He say May's car after the accident was about four or five feet north of his car. Arrington makes a sketch or diagram which is filed as an exhibit to his testimony to show his idea of the situation, and this is in the record.

Mrs. W. T. Lowery was sitting on the front seat of Arrington's car, on the right side, Mrs. Arrington being on the wheel side. Her testimony is substantially the same as Mrs. Arrington's. She felt Hamlett jar the car in which they were sitting, then he took three stumbling steps diagonally out into the street about five or six feet and was struck by May's Ford about even with the middle of the parked car.

These five witnesses for defendant, Frank May himself, Mrs. McMorris who was in the car with him, Mrs. Arrington and Mrs. Lowery who were in the parked car and Floyd Arrington who was returning to his car, all agree as to how the accident happened, and the testimony of the witnesses for plaintiff is not at all in conflict with that of defendant's witnesses. This lack of conflict is made emphatic by the fact that no witness for plaintiff is put on the stand to rebut the testimony as to Hamlett staggering out suddenly from the left rear fender of the parked car, diagonally north by east in front of the defendant's car running twelve to fifteen miles an hour and on a line from four to six feet north of the parked car. The testimony of defendant and his witnesses must be taken as establishing the undisputed facts of the case and they do not support a verdict for plaintiff.

Hamlett could have gone to the right of the parked car to the sidewalk and have been safe, or having gone to the left, if he had remained standing at the left rear fender or if he had continued on eastward in a line therewith, or turning in closer to the curb after passing the parked car, he would have been safe by a margin of four to six feet or more. His conduct made the accident unavoidable. We cannot see that any negligence can be predicated upon the conduct of the defendant. It is true he did not sound his horn. But the circumstances did not indicate the necessity for this until it was too late. Extreme caution might have dictated that the horn be sounded, but it

can hardly be said to be negligence to omit it. But if it can be found that defendant was in any way negligent, the contributory negligence of the deceased was such as to bar a recovery. The contributory negligence was concurrent and continuing to time of the accident. There was no interval of time or space in which the last clear chance doctrine could take effect. Under this state of facts it is well settled there can be no recovery. Railroad v. Beaver, 3 Tenn. App., 67; Todd v. Railroad, 135 Tenn., 92; Hodge v. Hamilton, 155 Tenn., 403.

The only attempt at rebuttal testimony is that Mrs. A. C. McDaniel, a stepdaughter of Hamlett, and her husband, Alvin McDaniel, testified that they parked their car, a Ford coupe near the same place where the Arrington car was said to be parked. But they say their car was parked south of the avenue and straight, not diagonal. There was room for both cars. This testimony does not contradict the five witnesses who saw the Arrington car with left rear fender three feet out in the street. Besides, Gill, a witness for plaintiff, says this parked car obstructed his view which would not be true of a car parked entirely south of the street.

The view we have taken of this case makes it unnecessary to discuss other assignments or other questions bearing on the first and second assignments.

It is contended for defendant that Hamlett was intoxicated at the time of the accident. There is strong proof of this. There was whiskey on his breath and in his pocket. The proof on this question, however, may not be free from conflict and it is not material to be determined. It is also contended that from plaintiff's proof alone no inference of negligence on the part of defendant could be drawn, but however this may be, we think that the whole proof shows that the testimony of defendant's witnesses, there being no testimony to conflict therewith, constitutes the uncontradicted evidence in the case, or rather we should say the defendant's testimony being superimposed upon the testimony for plaintiff, constitutes evidence in which there is no conflict, and which does not warrant any verdict for plaintiff.

It follows that the first and second assignments of error are sustained, the judgment of the lower court is reversed and the case is dismissed. The plaintiff will pay the costs.

Owen and Senter, JJ., concur.